**PAUL V. FERNICOLA & ASSOCIATES, LLC**
Paul V. Fernicola, Esq.
Robert E. Moore, Esq.
219 Broad Street
Red Bank, New Jersey 07701
Telephone: (732) 345-0600
Email: pvf@fernicolalaw.com
Email: rem@fernicolalaw.com

**FOX ROTHSCHILD LLP**
**Formed in the Commonwealth of Pennsylvania**
Corinne McCann Trainor, Esq.
Michael W. Sabo, Esq.
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
Telephone: 609-844-3038
Facsimile: 609-896-1469
Email: ctrainor@foxrothschild.com
*Attorneys for Plaintiffs*
*John A. Fernicola, John Fernicola, and Theresa M. Perrone*

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN A. FERNICOLA, JOHN FERNICOLA, THERESA M. PERRONE, AMETHYST INTERNATIONAL, INC., and WORLD TRADE ASSOCIATES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BOROUGH OF POINT PLEASANT BEACH, a municipal corporation of the State of New Jersey, and PAUL KANITRA, individually,<br><br>Defendants. | Civil Action No.: 3:22-civ-06971 (GC)/(RLS)<br><br>[FILED ELECTRONICALLY]<br><br>**THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs, John A. Fernicola, John Fernicola, Theresa M. Perrone, Amethyst International

("Plaintiffs"), by way of Third Amended Complaint against Defendants, Borough of Point

Pleasant Beach (the "Borough") and Paul Kanitra ("Mayor Kanitra") (together the "Defendants"), says:

## INTRODUCTION

1.      This case involves bad faith actions and the corrupt use of municipal resources by several Borough officials, including Mayor Paul M. Kanitra and former Police Chief Joseph Michigan, to deprive Plaintiffs of their personal liberty and their lawful right to use and enjoy their private property.

2.      Plaintiffs, John A. Fernicola, John Fernicola, and Theresa M. Perrone are adult individuals and owners of real property located at Block 86, Lots 1–4 and Block 86.01, Lots 11-13 on the tax map of Point Pleasant Beach, New Jersey, commonly known as 202 Arnold Avenue, Point Pleasant Beach, New Jersey (hereinafter collectively referred to as the "Property").  The Property is not situated in the Resort Commercial District west of Ocean Ave.  Rather, it is in the Borough's Residential Resort-2 zone.

3.      The Property is improved with an operating hotel known as the Amethyst Beach Motel, operated by Plaintiff Amethyst International, Inc. and managed by World Trade Associates, Inc., which, along with President and owner John A. Fernicola, have provided Borough residents and tourists with hotel accommodations at the New Jersey shore for decades. Plaintiffs have been good neighbors and citizens to the residents of the Borough. For example, they provided refuge to volunteers during Super Storm Sandy's aftermath, they sheltered the vulnerable populations of Ocean County, they provided video surveillance footage to law enforcement to aide their investigations and, they maintain a membership in the Point Pleasant Beach Chamber of Commerce, among other noble contributions. In return, Defendants tried to destroy Plaintiffs and their business when they needed help the most.

4.      At the outset of the COVID-19 pandemic, at a time when individuals and small hospitality businesses such as Plaintiffs were most vulnerable, Defendants targeted Mr. Fernicola and the Property in a thinly veiled attempt to purge the Amethyst Motel from the Borough.

5.      In or about late March and early April 2020, Mr. Fernicola repeatedly sought help from Borough officials, including Mayor Kanitra, to address a small group of vandals who were squatting at the Motel and otherwise trashing the Property by *inter alia*, kicking in doors, starting fires, and disrupting the peace. In response to Mr. Fernicola's repeated outreach to Mayor Kanitra and other Borough officials to remedy the situation, Mayor Kanitra, in concert with former Police Chief Joseph Michigan and others, falsely and without probably cause charged Mr. Fernicola with trumped-up violations of law, which were later dismissed with prejudice after the matter was transferred to a different, conflict-free municipal court. Indeed, the Borough failed to present a single witness or piece of evidence to support its case.

6.      Then, after filing baseless charges against Mr. Fernicola, the Borough attempted to condemn the Property in bad faith and without a valid public purpose.  Under oath, Mayor Kanitra has admitted that the Borough's ordinance, passed to authorize the use of eminent domain with respect to the Property, was introduced and approved by the Borough for the unlawful purpose of exerting undue pressure upon Fernicola and Perrone in arms-length negotiations for the Borough's acquisition of the Property. Thus, Mayor Kanitra has admitted that Defendants abused their power and authority.

7.      Over the course of three years, the Defendants have doggedly (without legal basis) pursued Plaintiffs outwardly and surreptitiously – in person, in the press, and by using social media – to discredit, defame and intimidate Plaintiffs into giving up the Property. The Defendants conducted themselves in a conscious-shocking manner unbecoming of public

officials, in abuse of their authority, pursuant to a custom, practice and policy, to impermissibly target Plaintiffs, and in violation of Plaintiffs' statutory and constitutional rights.

8.      As residents and good neighbors in the Borough, Plaintiffs have spent years helping others in their time of need. Then, instead of helping Plaintiffs in their hour of need, Defendants charged Mr. Fernicola, Mayor Kanitra defamed him, and Defendants abused eminent domain by using it as a negotiation tool, to thus condemn the Property without any basis.

## JURISDICTION AND VENUE

9.      This Court has original jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331.

10.     Further, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 as such claims form part of the same case or controversy as Plaintiffs' federal law claims.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 given that this District is the situs for the Property at issue in this action, and the events giving rise to the claims asserted herein occurred in this District.

## THE PARTIES

12.     Plaintiffs John A. Fernicola, John Fernicola, and Theresa M. Perrone are adult citizens of the State of New Jersey and owners of the Property.

13.     Plaintiff Amethyst International, Inc. is a New Jersey corporation with a principal place of business at the Property. Amethyst International is the operating company of the Amethyst Beach Motel.

14.    Plaintiff World Trade Associates, Inc. is a New Jersey corporation with a principal place of business at the Property. Plaintiff World Trade Associates is the property management company of the Amethyst Beach Motel.

15.    Defendant Borough of Point Pleasant Beach is a municipal corporation and corporate body politic organized pursuant to the Constitution and laws of Ocean County, the State of New Jersey, with offices located at 416 New Jersey Avenue, Borough of Point Pleasant Beach, of the State of New Jersey 08742.

16.    Defendant Paul M. Kanitra, the Mayor of the Borough of Point Pleasant Beach, is a citizen of the State of New Jersey with offices at 416 New Jersey Avenue, Borough of Point Pleasant Beach, of the State of New Jersey 08742.

## FACTUAL ALLEGATIONS

**A. Background and the Borough's Professed Need for Downtown Parking.**

17.    For years, the Borough sought to increase downtown parking to accommodate summer traffic and shore-visitors.

18.    On July 19, 2016, the Borough passed Ordinance 2016-15 to address, consistent with the Master Plan and related documents, "the need for more parking" and "the need to maximize parking space use by permitting parking in the Resort Commercial District west of Ocean Ave."

19.    On July 19, 2016, the Borough adopted an ordinance that discussed the need for more parking in the Borough west on Ocean Avenue and on Inlet Drive. Ordinance 2016-15 states in relevant part:

> WHEREAS, the Borough has recently completed a Master Plan Reexamination; and
>
> WHEREAS, the September 2015 Master Plan reexamination report states, on page 9 "As noted in the 2007 Master Plan Reexamination

Report, Point Pleasant Beach Borough suffers from an extreme shortage of parking during the summer months (i.e., from June through September), especially when school is out and on the weekends. The parking shortage is most critical along the oceanfront by the amusement area, and the existing parking areas that service the area are often overcrowded;" and

WHEREAS, the September 2015 Master Plan reexamination report states, on page 7 "The Committee agreed that there is a need for more parking. Options include: deck parking at the eastern portion of Silver Lake, deck parking at the Inlet, designated off site and off street parking for boardwalk employees, and/or parking as permitted/conditional use on the West side of Ocean Avenue.);" and

WHEREAS, the September 2015 Master Plan reexamination report states, on page 7 "The Planning Board supports the recommendation of investigating ways to provide additional parking in these areas of the borough. However, the Board does not agree with parking decks as an option to provide parking;" and

WHEREAS, the Governing Body agrees with the Planning Board that parking decks are not an option for the Borough of Point Pleasant Beach in any zone or location; and

WHEREAS, the Governing Body agrees that there is a need for more parking in the amusement area of Ocean Avenue on the west side; and

WHEREAS, Ordinance 2016 – 15, consistent with the Master Plan, and the Master Plan Reexamination Report of 2015, addresses the need for more parking, and, specifically makes parking a permitted use on a two and ½ block area on the west side of Ocean Avenue near the amusement area as requested in the Master Plan Reexamination Report as detailed above; and

WHEREAS, the September 2015 Master Plan reexamination report states, on page 13 "[i]t is recommended that the borough quantify the existing public and private, fee-based parking areas near the boardwalk, and attempt to maximize parking options while buffering residential neighborhoods;" and

WHEREAS, Ordinance 2016 – 15 specifically addresses the need to maximize the use of existing parking spaces in the area west on Ocean Avenue and on Inlet Drive; and

WHEREAS, maximizing the use of existing parking will improve the current parking deficiency . . .

6

20.     Ordinance 2016 – 15 acknowledged that the Borough needed more parking in areas in the Resort Commercial District west of Ocean Ave. The Ordinance did not refer to any need for additional parking in the Residential Resort-2 Zone, where the Property is situated.

**B. Defendants' Campaign Against the Amethyst Beach Motel, Conspiracy to Deprive Plaintiffs of Their Constitutional Rights, the False Press Release, and the Unlawful Charges Against Mr. Fernicola.**

21.     Between 2016 and 2020, Plaintiffs ran the Amethyst Beach Motel successfully with little interference from the Borough. However, leading up to the COVID-19 pandemic and particularly during the lockdowns, the Borough's posture grew steadily more adversarial towards Plaintiffs.

22.     Before passing Ordinance 2021-12 (the "Condemnation Ordinance"), the Borough has repeatedly characterized the Amethyst Beach Motel and its primarily Black and Latino residents and patrons as being problematic for the Borough and the "up-scale" atmosphere Defendants are attempting to cultivate.

23.     For years, Plaintiffs maintained a contract with the Ocean County Board of Social Services to provide emergency, temporary housing services for guests with disabilities, special needs, and other vulnerable populations from in or about October to May: the off-season. As a result of Defendants' conduct, Plaintiffs have been forced to discontinue their long-held contract with the Ocean County Board of Social Services.

24.     The Defendants have thus repeatedly targeted the Amethyst Beach Motel for harassment to push Plaintiffs to close the Motel or sell the Property to the Borough without just compensation.  In March 2020, Defendants saw an opportunity to move their plan forward.

25.     On March 9, 2020, Governor Murphy signed Executive Order No. 103, which declared a "State of Emergency and a Public Health Emergency" in response to the COVID-19 Pandemic.

26.     Ten days later, Governor Murphy signed Executive Order No. 106, which ordered that any lessee, tenant, homeowner, or any other person shall not be removed from a residential property by eviction or foreclosure proceeding. Executive Order No. 106 explicitly defined "residential property" to mean any property rented or owned for residential purposes, but "shall not include any hotel, motel, or other guest house, or part thereof, rented to a transient guest or seasonal tenant . . .." Instead, hotels like the Amethyst Beach Motel were governed by the New Jersey Innkeeper Statute, N.J.S.A. 29:2-1 et seq.

27.     Due to problems with  a small group of people at the Property at the outset of the worldwide COVID-19 pandemic in 2020 the imposition of certain COVID-19 restrictions, and the Borough's simultaneous interference with Plaintiffs' guests and failure to help mitigate the tense situation that was growing at the Property, in or about early April 2020, Mr. Fernicola contacted Councilman Migut, seeking his help because the Borough did nothing to assist Plaintiffs when they called for police support. When Mr. Fernicola called on Councilman Migut for help and intervention, Councilman Migut advised him to call the police as often as needed to maintain order and control at the Property.

28.     At the same time, Borough officials (including Mayor Kanitra and then-Police Chief Joseph Michigan) conspired behind the scenes to target Plaintiffs and the Property to poison Plaintiffs' public reputation and standing in the community. In an April 8, 2020 text message, Kanitra told privately Chief Michigan "I hope you unload on [Plaintiffs] tomorrow."

29.    While Mr. Fernicola was pleading for the support of law enforcement, Mayor Kanitra and Chief Michigan ridiculed his plight, suggesting that Plaintiffs would not have such problems if they would just stop renting rooms to the vulnerable Black, Latino, disabled, special needs and other vulnerable guests temporarily placed at the Amethyst by the Ocean County Board of Social Services. After receiving a text message from Mr. Fernicola in which he pleaded for help, Mayor Kanitra forwarded the text message to Chief Michigan and quipped, "[d]on't take anymore customers then."

30.    Chief Michigan and Kanitra conspired and agreed to use municipal resources and the police force to exact retribution on Plaintiffs. Chief Michigan told Mayor Kanitra that Mr. Fernicola was "a liar" and stated that "I will have no problem calling him out over the phone and putting out our own press release with an announcement of all the pending criminal charges we can issue him for his past and current actions." Mayor Kanitra responded, "Sounds fair to me."

31.     Chief Michigan's comments presaged the coming false Press Release, abuse of municipal resources, unjustified charges against Mr. Fernicola and pretextual condemnation. Shortly thereafter, Mayor Kanitra told Chief Michigan that he wished the Borough "could buy [Plaintiffs'] place and tear it down tomorrow." Chief Michigan replied that "I can't keep quiet any-more," and "This guy[']s unreal." Mayor Kanitra concluded that he and Chief Michigan "should discuss how to announce the crack-down tomorrow."[1]

32.    On or about April 8, 2020, at a time when John Fernicola was pleading for the support of Borough officials and law enforcement to redress the small group vandals and squatters that were causing property damage and disrupting the peace at the Property, Mayor

---

[1] To make matters worse, Mr. Fernicola testified at his deposition in the civil state matter that then-Police Chief Michigan threatened Mr. Fernicola that if he exercised his legal rights and removed the people squatting at the Amethyst, "I'm going to have you arrested."

Kanitra conspired with Chief Michigan to do nothing, as evidenced by a text message that Mayor Kanitra wrote to Chief Michigan that stated, "our police have washed their hands of things." Just three days later, on April 11, 2020, the police issued unsupportable summonses and citations to Mr. Fernicola and the Amethyst Motel's manager for disorderly person charges and did so without any legal basis.

33.    During this same period, Mayor Kanitra read and disseminated defamatory messages to third-parties, including journalists and Point Pleasant Beach residents, maligning Mr. Fernicola in an effort to further destroy his reputation in the community.

34.    As foreshadowed by the private conversation between Mayor Kanitra and Chief Michigan, the Point Pleasant Beach Department published a false and misleading Press Release, which they disseminated to the public and posted on the Police Department's Facebook Page. The Press Release was the product of Defendants' plan to target Plaintiffs and the Property for simply seeking help during the COVID-19 Pandemic. The Press Release, which was also posted on the front page in local newspapers for all to see, stated:

> On Saturday, April 11th, Officers from this department responded to the Beach Amethyst Motel [sic] at 202 Arnold Ave for a report of a dispute between management and the occupants of several rooms. Upon arrival, officers separated the individuals and learned that the dispute started when the manager began demanding tenants pay their rent or be forced to leave. The tenants also reported having their power being shut off to several rooms for not paying their rent on time. Investigation showed a pattern by management and the owner of the motel, in which power and cable were shut off repeatedly in rooms where the occupants were late on their rent. The Ocean County Prosecutor's Office was contacted and authorized charges against the owner, John Fernicola and the manager of the motel, Amanda Wood. Each was charged with 4 counts of committing an unlawful act while under the Governor's order during a state of emergency.
>
> It should be noted that officers from this department have responded to the Beach Amethyst Motel [sic] several times a day since April 1st, for various incidents, including disputes, assaults, disturbances and threats. Since the

COVID-19 Pandemic, the police department has not received any other reports of landlords or motel owners reacting in this manner by forcing people to pay their rent.

The lack of cooperation from Mr. Fernicola and his staff have diverted police resources on numerous occasions for matters exacerbated by their actions and attitudes. Chief Joseph Michigan stated, "These are trying times, and people are obligated to work with each other in order to pay their rent. However, using tactics to force or threaten compliance will not be tolerated."

35. Notably, the Press Release omitted any reference to the surrounding circumstances involving the Property, the context of what transpired leading up to Press Release or that Councilman Migut advised Plaintiffs to call police as a last resort to protect their personal safety and private property rights.

36. The Press Release also failed to mention that on or about the first week of April 2020, Borough Officer Ippolito, without legal basis, instructed the occupants of the Amethyst Beach Motel that they did not have to pay and that they did not have to leave the hotel. Because the Borough's Police Department refused to remove the several bad actors from the Property, and because they advised them that they did not have to leave and did not have to pay, several individuals wreaked havoc at the Property leaving Mr. Fernicola and the Amethyst without recourse.

37. There was no probable cause to issue the summons to Mr. Fernicola or the Amethyst Motel's manager because it was not until April 25, 2020, that Governor Murphy expanded the COVID-19 eviction moratorium by a new executive order to hotel occupants, such that the Amethyst and Mr. Fernicola were not able to remove any occupants from the Property. Defendants and other Borough officials, agents, and employees therefore took said state actions under color of law without legal basis.

38.     As detailed in the Press Release, and without probable cause or evidence, the Borough then charged Mr. Fernicola on April 11, 2020, for purportedly: (1) "turning the power off to Room 102 where Shea B. Hawkins resides;" (2) "turning the power off to Room 102 where Caroline T. McGowan resides;" "turning the power and cable off to Room 105 where David M. Miller resides;" and (4) "turning the power off to her stove in Room 127 where Penny E. Peters resides."

39.     Thereafter, Defendants instituted an action in Point Pleasant Beach municipal court against Mr. Fernicola without probable cause for "violations" of Disorderly Persons Offenses under A:9-49(a).

40.     The charges lay dormant for over two-years in the Point Pleasant Beach Municipal Court while Defendants weaponized Borough resources against Plaintiffs to drive them out of the Borough and sell the Property.

**C. The Borough's 2021 Master Plan Amendment Details Need for Downtown Area Parking Away from the Property.**

41.     The Borough has continued to review municipal parking needs since it passed Ordinance 2016-15. The Borough's review and determinations about its parking needs demonstrate that Defendants' 2021 support of the ordinance authorizing the use of eminent domain to take the Property for use as a parking lot was a sham.

42.     On February 9, 2021, the Borough Planning Board adopted the "2021 Reexamination & Master Plan Amendment" (the "2021 Amendment"). Relevant here, the 2021 Amendment identified "Parking Objectives" and the need to "expand the supply of parking spaces in the underlined downtown area of the borough." (emphasis added). The 2021 Amendment also noted that the Borough should "increase the turnover of parking spaces in the downtown area of the borough." (emphasis added).

43.     The 2021 Amendment also reexamined prior Borough reports and provided a 2020 status update of identified objectives. As to downtown parking deficiencies, the 2021 Amendment noted that as to the 2020 parking needs, the need to increase turnover of parking spaces in the downtown area was "no longer relevant" and that the borough should "[o]ptimize use of the train station lot to better accommodate visitors."

44.     Moreover, the 2021 Amendment stated that as to the objective of quantifying and "maximiz[ing] parking options while buffering residential areas," "Objective addressed. This analysis was completed, and Ordinance 2016-15 was adopted to maximize parking space use by permitting parking in the Resort Commercial District west of Ocean Ave."

45.     The Borough, therefore, believed it had addressed any outstanding parking objectives by February 2021 and to the extent it had not, Ordinance 2016-15 addressed any lingering parking deficiency concerns.

46.     No portion of the Property falls within the "downtown area" identified in the 2021 Amendment.  Therefore, there was no legitimate basis to identify it or threaten to condemn it to satisfy any outstanding parking need in the Borough.

**D.  The First Failed Condemnation Attempt.**

47.     As 2020 turned to 2021, the Defendants grew restless and desperate to rid the Borough of Plaintiffs and their patrons. In January 2021, Councilman Migut warned Mayor Kanitra that trying to condemn the Property without proper legal basis would risk incurring the "wrath of residents" and warned that the Borough's conduct would risk making the Property "too expensive to condemn and meet the [] property owner's price." Councilman Migut then asked Mayor Kanitra to "remember the 100 possible parking spaces on Ocean [A]ve.," questioning "how do you argue there is a lack of parking?"

48.    On or about March 18, 2021, the Borough filed a Petition for Pre-Litigation Inspection in the Law Division Ocean County.  The Petition sought to compel Plaintiffs to allow the Borough's entry onto Plaintiffs' Property for the purposes of inspection and appraisal.

49.    At the time of the filing of the Borough's Petition, no ordinance had been adopted by the Borough to authorize the taking of the Property pursuant to its power of eminent domain.

50.    Pursuant to N.J.S.A. 40:69A-181(b), no ordinance shall take effect less than twenty (20) days after its final passage.

51.    Therefore, the Honorable Marlene Lynch Ford, A.J.S.C. dismissed the Borough's Petition due to the Borough's failure to comply with the requirements of N.J.S.A. 20:3-16 which governs pre-litigation entry onto a property targeted for acquisition.

**E.  The Borough Stonewalls Plaintiffs and Refuses to Provide Any Objective Basis for Condemning the Property.**

52.    Despite the Borough's professed need for additional downtown parking and the 2021 Amendment, the Borough unlawfully targeted the Property for acquisition without any objective basis.

53.    To proceed with its unlawful taking, on March 2, 2021, the Borough presented and discussed a draft of the Condemnation Ordinance, which it ultimately passed, stating on its face, without explanation, that the Borough is generally "in need of the Property to provide parking for those seeking access to the beaches in the Borough." The Condemnation Ordinance reads in pertinent part:

> WHEREAS, pursuant to N.J.S.A. 40:61-1(a), the governing body of a municipality may acquire, lay out, improve, embellish and maintain within and without the municipality, such public parks, squares, open spaces, playgrounds, beaches, water fronts and places for public resort and recreation, and also streets, avenues, boulevards, parkways and parking lots leading to and connecting the same, as it may deem advisable, and extend and enlarge the

same or any of them; and for such purpose, acquire, in fee or less estate, and by gift, devise, purchase or condemnation, any real estate, improved or unimproved, or interest therein, within or without the municipality suitable therefore; and

WHEREAS, the Borough of Point Pleasant Beach desires to acquire the property identified on the Tax Maps of the Borough as Block 86, Lots 1, 2, 3 and 4 together with Block 86.01 Lots 11, 12 and 13, together with any interests in adjacent roadways not already owned by a public entity (the "Property") for the purposes of planning, developing and maintaining the property as open space and for the development and maintenance of facilities for the accommodation and flow of vehicles in the Borough . . .

WHEREAS, the borough is in need of the Property to provide parking for those seeking access to the beaches in the Borough; and

WHEREAS, the acquisition of the Property for planning, developing and maintaining the property for the development and maintenance of facilities for the accommodation of and flow of vehicles in the Borough constitutes a public purpose . . ..

54.    At the March 2, 2021 council meeting, Councilman Santanello questioned the true intent of the proposed Condemnation Ordinance, and according to the minutes, he said during the public portion of the Council Meeting:

(Councilman Santanello: when this was presented in closed session, there were specific 2 reasons the Mayor wanted to acquire this property – one was parking – concerned that the second reason is not being discussed).

55.    On March 2, 2021, Councilman Santanello also intimated that the true purpose for the Condemnation Ordinance was to target Plaintiffs and the Property for the perceived "undesirable" population that resided there. The acquisition of the Property was discussed as reflected in the Minutes:

Draft Ordinance 2021-12 (Authorizing Acquisition of Lots 1, 2, 3 & 4 in Block 86, and Lots 11, 12 & 13 in Block 86.01 together with any interests in adjacent roadways not already owned by a public entity) was discussed. Mayor Kanitra: this matter was

15

discussed in closed session prior to this – Council was unanimous in wanting to move forward – are coming to the more technical parts of the conversation – need to make it formal and look at bond ordinances – this is for acquisition of the Amethyst Motel and lands surrounding it, which are contiguous to the Little Silver Lake parking lot – this is a result of a drastic need of increased parking, coupled with a recent town survey, where respondents are almost 2-1 in favor of expanded paid parking, even into neighborhoods where it currently doesn't exist – need public access to beach and water for residents and guests – intent of acquisition would be to tear down the property and create more parking (Attorney Riordan: ordinance authorizes the Borough, Borough professionals and Appraiser to take any and all steps necessary to acquire the property, either by reaching an agreement with the property owner or by any other lawful means – the expectation is that, at the next meeting, this ordinance would be up for 1st reading and, at the subsequent meeting, for 2nd reading) the land owner has said he will not be available until April – this shows a commitment by the Borough to address parking on all levels – BA/CFO Riehl was talking about replacing some old meters that don't have credit card readers and are capped at a limit – will take some steps on that as well – this fits in strongly with that discussion (Councilman Santanello: when this was presented in closed session, there were specific 2 reasons the Mayor wanted to acquire this property – one was parking – concerned that the second reason is not being discussed) as was stated clearly, the purpose for acquiring this is for parking – that's the common good – **any other components and side effects associated with this property are well-known by police and residents – invited OPRA requests – if, as an unintended side effect, officers have more time to tackle other issues around town, that's a positive** – will be on next meeting.

[Emphasis added.]

56.    Just as Councilman Santanello revealed, the true improper purpose behind enacting the Condemnation Ordinance was discussed during closed door meetings that certain Borough officials convened in January and March 2021.

57.    While Mayor Kanitra misled the public that the purpose of the Condemnation Ordinance authorizing the acquisition of the Amethyst Beach Motel Property was to create more

parking for beachgoers and further misled the public about the purported "survey" that he referenced at the meeting, the true intention for the Condemnation Ordinance was unlawful.

58.    During the January 2021 closed session several months prior, Chief Michigan told the governing body that the Amethyst Motel was a problem, with multiple calls to the Police Department resulting in the Amethyst Beach Motel being the most visited facility in the Borough by the Police Department in 2020.  Neither Chief Michigan nor Mayor Kanitra revealed that in March and April 2020, they refused to help mitigate the bad actions of a small number of the Motel's guests and others that were not staying at the Motel at the outset of the COVID-19 Pandemic. Nor did Chief Michigan nor Mayor Kanitra reveal that they agreed to target and issue summonses to Mr. Fernicola, without probable cause, to punish him for asking for police support when a small number of bad actors caused property damage and otherwise disturbed the peace at the Property.

59.    Contrary to what actually transpired at the time, and contrary to what Mayor Kanitra and Chief Michigan actually said during the closed-door session of the Council meeting, during the Borough Council's open session meeting in March, Mayor Kanitra only mentioned the Borough's alleged need for parking and not the purported problems with the Motel which had been discussed during the closed-door session in January and elsewhere.

60.    During the open session, Councilman Santanello pushed Mayor Kanitra repeatedly on this issue and Mayor Kanitra finally conceded that police calls to the Amethyst Motel are a major issue, residents are aware of it, and that people should file an Open Public Records Act ("OPRA") request to find out about all of the problems at the Motel.

61. The first reading of the Condemnation Ordinance occurred during the Public Meeting held on March 16, 2021. Due to the COVID-19 pandemic, this public meeting was conducted via Zoom video conferencing.

62. During the March 16, 2021 Meeting, Councilman Santanello spoke about the "condemnation ordinance" stating that he was "uncomfortable about seizing business for simple reason of needing more parking – worries about a slippery slope . . ."

63. Public comments regarding Ordinance 2021-12 during the March 16, 2021 Council Meeting reflected that the general publicwas aware of the true purpose of the Borough's desire to acquire the subject Property.

64. At the meeting, citizens, including Mr. Dan Friendly, objected to the Borough's conduct. According to the meeting's minutes, Mr. Friendly stated that you "can't just take someone's property or business of 50-60 years because there are problems – that is their land – dangerous precedent – a multitude of other remedies . . ."

65. The meeting minutes also reflect that Mr. Vincent Barrella (a former two-term Mayor of Point Pleasant Beach) stated his concern about using eminent domain under the circumstances because that awesome power cannot be used legitimately to shut down a business that the Borough does not like:

> From a parking perspective, asked if cost benefit has been looked at – assumes garage would not make sense on the Amethyst property (Mayor Kanitra: looked at number of spaces and cost value analysis – financially, the acquisition makes sense) agrees with Mr. Friendly and Mr. Santanello – is concerned about the idea of taking property – personally believed PPB would be better off without the Amethyst but that's not the proper use of eminent domain . . .

66. On the first (March 16, 2021) and second introduction (April 20, 2021) Mayor Kanitra and the Borough Attorney, Mr. Kevin Riordan, Esq., continued to insist that the use of

eminent domain is for parking spots, despite the overwhelming contemporaneous evidence that parking was a pretext for the true intent of the Ordinance: the closure of the Amethyst Beach Motel.

67.    During the portion of the meeting when the public has the right to be heard, Plaintiffs' counsel questioned the basis for Mayor Kanitra's reference to a purported survey that was conducted, was barred from participating in the Public Meeting at the direction of the municipal attorney, Kevin Riordan, Esq. as well as Mayor Kanitra. The minutes state:

> Paul Fernicola, Condemnation Atty. from Red Bank for John Fernicola (no relation): here about Ordinance 2021-12 – was present at the March 2nd meeting – asked if Borough studied other properties as potential sites for additional parking (Atty. Riordan: under no circumstances will the Governing Body answer his questions – not proper – told Councilman Vitale to cut him off if he asks another question) at the March 2nd meeting, the Mayor, prompted by Councilman Santanello, made statements that the property is well known to the police and the police will have time to tackle other issues – appears that parking is secondary – using parking as a pretext – asked if the cost analysis, referenced by the Mayor, is available to the public (Mayor Kanitra: told Councilman Vitale to say goodbye; Councilman Santanello: an amazing block on free speech; Mayor Kanitra: Councilman Santanello is anti-residents and wants to spend a ton of taxpayer money – can't have attorneys who are going to sue come on and cross examine; Atty. Riordan: Councilmen who continue to help attorneys who are suing the Borough put themselves in serious jeopardy; Mayor Kanitra: seems like a conflict of interest – Councilman Santanello is trying to set up the Governing Body; arguing ensued).

68.    Attorney Paul V. Fernicola, Esq. (counsel for Plaintiffs) attempted to re-enter the Zoom public meeting, but the Borough barred Attorney Fernicola from rejoining the meeting.

69.    Later during the same March 16, 2021 meeting, Mayor Kanitra candidly admitted to prohibiting Plaintiffs' counsel from participating in the public Meeting as reflected in the Meeting Minutes, "(Mayor Kanitra: have let everyone speak, except for an attorney trying to question the Governing Body . . .)".

70.     Prior to being barred from the public meeting on March 16, 2021, Plaintiffs' counsel asked if the "cost analysis" referenced by Mayor Kanitra was available to the public. The Borough has never produced a legitimate "cost analysis" or any other objective basis to condemn the Property.

**F.  Mayor Kanitra Defames Plaintiff John Fernicola to Councilman Migut.**

71.     Mayor Kanitra first defamed Mr. Fernicola while the Defendants sought to target the Property in 2021.

72.     During a March 2021 conference call with Mayor Kanitra and Attorney Riordan, Mayor Kanitra confronted Councilman Migut as to why he would not want to condemn a property that had become such a police nuisance.

73.     Councilman Migut then advised Mayor Kanitra that he could not vote for the Condemnation Ordinance for pretextual reasons when he advised Mr. Fernicola to call the police to deal with people Mr. Fernicola could not lawfully evict.

74.     Mayor Kanitra read Councilman Migut a Facebook application message received from Mr. Fernicola's ex-wife, in which she falsely stated that Mr. Fernicola was a notorious drug dealer during the 1980's and 1990's and that a person died of a cocaine overdose in the motel while Mr. Fernicola worked on his car. Attorney Riordan commented to Mayor Kanitra that in light of revelation that Councilman Migut directed Mr. Fernicola to call the police, the Borough would have to stop portraying the Motel as a "nuisance" and thus a reason to condemn the Property.

75.     At his deposition in the state matter prior to removal, Mayor Kanitra confirmed that he did not conduct any investigation into the accuracy or the truthfulness of the defamatory statements from Plaintiff John Fernicola's ex-wife describing Mr. Fernicola as a "drug kingpin"

and claiming, without any basis, that Mr. Fernicola allowed someone to die of an overdose at the Amethyst Beach Motel.

76.     Mayor Kanitra also admitted at his deposition that did not ask the Borough police or any law enforcement agency to conduct any investigation into the veracity of these statements contained in the Facebook message sent by Plaintiff John Fernicola's ex-wife prior to sharing with the reporter.

77.     During his deposition, Mayor Kanitra conceded that calling Plaintiff John Fernicola a "drug kingpin" was tantamount to accusing Mr. Fernicola of committing a crime and doing so would negatively impact his personal and business reputation in the larger community.

### G. The Borough Admits That It Passed Ordinance 2021-12 Without Any Legal Basis and to Improperly Gain Negotiation Leverage with Plaintiffs.

78.     On April 20, 2021, the Borough passed the Condemnation Ordinance authorizing the acquisition of the Property by a vote of 4 to 3.  Mayor Kanitra provided the tie-breaking vote to pass the Condemnation Ordinance.

79.     The Condemnation Ordinance did not mention any parking study, traffic flow analysis, expert planner report or any other objective basis to condemn the Property for public parking. Instead, the Condemnation Ordinance generally stated that the Borough "is in need of the Property to provide parking for those seeking access to the beaches in the Borough" and "the acquisition of the Property for planning, developing and maintaining the property for the development and maintenance of facilities for the accommodation of and flow of vehicles in the Borough constitutes a public purpose . . .."

80.     In the course of discovery for the instant litigation prior to removal, the Borough belatedly produced an undated document entitled "PPB Survey," which shows that approximately 52% of residents indicated that parking space availability was not an issue at all

or had no opinion. Even though no actual parking study existed, and the informal public "survey" indicated a majority of the public did not find parking availability to be an issue, the Borough enacted the Condemnation Ordinance anyway. Accordingly, the representation that Mayor Kanitra made at the March 2, 2021 Council Meeting, that "in a recent town survey, respondents are almost 2-1 in favor of expanded paid parking, even into neighborhoods where it currently doesn't exist," is false.

81.     At his deposition, Mayor Kanitra confirmed what Plaintiffs and the public already knew to be true: the Borough introduced the Condemnation Ordinance as part of its effort to gain leverage in its negotiations with Plaintiff John Fernicola to acquire the Property.

**H. Plaintiffs Commence This Prerogative Writ Action to Vindicate Their Statutory and Constitutional Rights.**

82.     Plaintiffs originally commenced the instant action as a complaint in lieu of prerogative writ on May 18, 2021.[2] Defendants moved to dismiss the complaint. The Honorable Marlene Lynch Ford, A.J.S.C. denied the motion in part and permitted the prerogative writ claim to proceed.

83.     In response to Defendants' pattern and practice of corrupt behavior and weaponization of government resources against Plaintiffs, Plaintiffs filed an Amended Complaint on February 18, 2021. The Amended Complaint reiterated the prerogative writ claim and added a claim for Defamation against Mayor Kanitra.

84.     Defendants again moved to dismiss the Amended Complaint in April 2022. The Honorable Marlene Lynch Ford, A.J.S.C. again rejected Defendants' claims in their entirety and

---

[2] The original complaint also included a claim for violation of the Open Public Meetings Act or the New Jersey Sunshine Law, N.J.S.A. 10:4-6 et seq.

permitted the Amended Complaint to proceed. The Court also rejected Defendants' attempt to bifurcate the prerogative writ claim and the defamation claim.

**I.   Mayor Kanitra Defames Plaintiff John Fernicola Again After the Council Passed the Ordinance and During this Litigation.**

85.    On February 25, 2022, Mayor Kanitra posted on Facebook that Plaintiff John Fernicola has a councilman "in his back pocket" and implied that Plaintiff John Fernicola engaged in "bribes and corruption."

86.    Mayor Kanitra posted the "bribes and corruption" comment on Facebook to the public and published and/or disseminated these false claims to untold numbers of third-parties. Mayor Kanitra posted these defamatory and libelous comments without any basis.

87.    Mayor Kanitra wrote and published the Facebook post with actual malice and in reckless disregard of the truth of the statements contained in the post.

**J.   The Borough Repeals the Condemnation Ordinance Conceding Its Illegality and Unlawful Purposes.**

88.    After Plaintiffs' counsel deposed Chief Michigan and Mayor Kanitra, the Borough conceded that it could not sustain its burden of establishing that the taking of the Amethyst Motel was for a legitimate public purpose.

89.    On July 5, 2022, the Borough passed Ordinance 2022-18, repealing the Condemnation Ordinance in its entirety.  In so doing, Defendants conceded that no parking study or analysis existed to justify the Borough's conduct and that Defendants acted for pretextual reasons and in bad faith in trying to condemn the Property.

**K.   Mayor Kanitra's Comments Signal Defendants Will Again Try to Condemn the Property for Pretextual Purposes and Without Legal Justification.**

90.    In the Ocean Star Newspaper dated July 8, 2022 (just three days after repealing the Condemnation Ordinance), Mayor Kanitra attempted to justify the Borough's decision to

rescind the Condemnation Ordinance because "Our attorneys recommended that we conduct a parking study before continuing further and once the parking study is complete, we should be in a much better position to swiftly finish things up."

91.    Mayor Kanitra continued: "Our assumption is that [the study] will provide irrefutable expert opinion on our need for parking and where those needs lie and what the effects of those needs on the borough have been." In making these statements, Mayor Kanitra all but admitted that the new so-called "study" will not be an objective empirical study at all, but simply another pretext and vehicle to unlawfully pursue Plaintiffs and eliminate the Amethyst Motel because of the Mayor's belief that many of the motel's occupants are not desirable.

92.    In short, Defendants' behavior indicates it is only a matter of time before they redouble their efforts and seek to condemn the Property without any proper purpose.

93.    The aforementioned conduct by Defendants has caused and continues to cause Plaintiffs substantial pecuniary harm and reputational damages.

**L. The Municipal Court Dismisses All Charges Against Mr. Fernicola With Prejudice and Orders Mr. Fernicola's Record Expunged.**

94.    On or about the first week of April 2020, Borough officials and agents, including Borough Officer Ippolito, without legal basis, also instructed the occupants of the Amethyst Beach Motel that they did not have to pay and that they did not have to leave the hotel. Behind the scenes, Mayor Kanitra and then-Police Chief Michigan conspired to arrest and charge Mr. Fernicola.

95.    In response to Plaintiffs' repeated efforts to obtain assistance from the Borough, the Borough charged Mr. Fernicola without probable cause or a warrant on April 11, 2020.

96.    Defendants instituted an action in municipal court against Mr. Fernicola for "violations" of Disorderly Persons Offenses under A:9-49(a).

97.    The Borough initially scheduled a remote trial with respect to the criminal charges to be held on or about June 19, 2020, but this matter sat idle until June 22, 2022.

98.    Two and a half years after Defendants levied unsupported charges against Mr. Fernicola, this case proceeded to trial in person before Municipal Judge Phillip M. Miller, J.M.C. on October 31, 2022.

99.    At the trial, none of the Borough's witnesses (including the police officer with relevant information who arrived on scene) appeared in court. The Municipal Judge concluded that even if the police officers appeared, none of them had personal knowledge of the alleged actions cited to support the Borough's issuance of the summonses against Mr. Fernicola in the first instance.  Prior to issuing an order dismissing the summons, the judge also noted that under the circumstances, Mr. Fernicola would not stipulate to probable cause.

100.    The Municipal Court subsequently dismissed the criminal charges with prejudice and issued an expungement order requiring that all state entities, including the Borough, "remove from their records all information relating to [Mr. Fernicola's]" baseless charges for four alleged violations of N.J.S.A. A:9-49A, disorderly person violations. The expungement order also states that in response to any records requests regarding the baseless charges against Mr. Fernicola, "the court office or law enforcement agency shall reply with respect to the arrest/charge/disposition, which is the subject of this Order, that there is no record."

101.    Plaintiffs have suffered and continue to suffer damages from the Defendants' unlawful conduct.

**M. Defendants' Continued Unlawful Action is Further Evidence of a Pattern, Practice, Custom and Habit of Constitutional Violations and Tortious Interference Inflicted on Political "Opponents."**

102.    The Borough and its officials have continued to interfere with Claimant's business, including but not limited to, Plaintiffs' support and involvement with the New Jersey Offshore Powerboat Racing Association sponsored boat race, to headquartered at the Property.

103.    These instances are mere examples of the many that have occurred in recent years, during Mayor Paul Kanitra's administration, where the Borough and its officials have engaged in a course of conduct, custom, practice and policy of retaliation and obstruction concerning persons and businesses in the Borough that refuse to toe the political line.

104.    For example, the Borough (including the Mayor and Zoning Official Savacool) has been sued in New Jersey state and federal court for actions constituting the abuse of municipal authority numerous times, and in at least the following cases: (1) Albert Marine Constr., Inc. v. Borough of Point Pleasant Beach et al., OCN-L-2181-21; (2) Burke et al. v. Borough of Point Pleasant Beach, OCN-L-2796-21; (3) Anthony Storino et al. v. Borough of Point Pleasant Beach et al., Civ. A. No. 20-civ-11906 (FLW)/(DEA); and (4) Selvaggi v. Borough of Point Pleasant Beach et al., OCN-L-185-22/Civ. A. No. 22-civ-00708 (RK)/(JBD).

105.    Defendants thus continue to weaponize municipal authority, including its zoning offices, building offices and local regulators, to target Plaintiffs and other perceived political "opponents" in violation of federal, state, and common law.

106.    Plaintiffs have suffered and continue to suffer damages from the Defendants' unlawful conduct.

## **COUNT ONE**

### ***Prerogative Writ***

107.    [Reserved, pursuant to Superior Court of New Jersey's Order dated September 14, 2022].

## **COUNT TWO**

*Defamation*

108.    Plaintiffs incorporate by reference the contents of the preceding paragraphs as if fully set forth herein.

109.    Plaintiff John Fernicola is a non-public figure.

110.    Mayor Kanitra did make statements of a defamatory nature regarding Plaintiff John Fernicola.

111.    In March 2021, Mayor Kanitra did make statements to third-parties that Plaintiff John Fernicola was a notorious drug dealer during the 1980's and 1990's. At his deposition, Mayor Kanitra admitted that calling someone a drug dealer or "drug kingpin" was tantamount to accusing someone of a crime.

112.    In March 2021, Mayor Kanitra did make statements that Plaintiff John Fernicola allowed a guest of the Amethyst Motel to die of a drug overdose while Plaintiff John Fernicola did nothing to assist the person, did not call the authorities or summon aid for the person. Mayor Kanitra's statements damaged Plaintiff John Fernicola's personal and business reputation in the community.

113.    Mayor Kanitra did also make statements via social media post on February 25, 2022, that Plaintiff John Fernicola has a councilman "in his back pocket" and implied that Plaintiff John Fernicola engaged in "bribes and corruption."

114.    The statements were made knowing they were false or made so recklessly as to amount to a willful disregard for the truth.

115.    Mayor Kanitra published and disseminated these false claims through suggestions, insinuations, and representations to third parties and in presence of a third person,

either by intention or by negligence, or with reasonable ground to suppose that it will become known to others. Gnapinsky v. Goldyn, 23 N.J. 243 (1957).

116.    Said statements and similar statements by Mayor Kanitra did cause injuries to Plaintiff John Fernicola's reputation and business.

117.    These statements made do not qualify for any privilege or immunity and were made to third-parties outside the scope of legislative activity.

118.    Defendants are liable to Plaintiff John Fernicola for said damage to his reputation and business.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for;

    a.  Compensatory and consequential damages;
    b.  Statutory and punitive damages;
    c.  Attorney's fees;
    d.  Prejudgment interest;
    e.  Costs of suit; and
    f.  Any other relief the Court deems just and equitable.

## COUNT THREE

*42 U.S.C. § 1983, Violation of the Equal Protection Clause of the Fourteenth Amendment Under Class of One Theory—Against All Defendants*

119.    Plaintiffs incorporate by reference the contents of the preceding paragraphs as if fully set forth herein.

120.    Plaintiffs are persons protected by this statute, the United States Constitution, the New Jersey Constitution, and federal and state law.

121.    Defendants, through their illicit conduct, including but not limited to, issuing the Press Release, passing the Condemnation Ordinance, and charging Mr. Fernicola without probable cause, treated Plaintiffs and the Property differently than others similarly situated. Defendants have not acted in this manner towards any other hotel operator.

122. Defendants treated Plaintiffs and the Property in an arbitrary, capricious, and unreasonable manner intentionally.

123. Defendants had no rational basis to treat Plaintiffs and the Property differently.

124. Plaintiffs suffered and continue to suffer damages from Defendants' arbitrary treatment of them and the Property.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for;

    a. Compensatory and consequential damages;
    b. Statutory and punitive damages;
    c. Attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983, 1985 and 1988(b);
    d. Prejudgment interest;
    e. Costs of suit; and
    f. Any other relief the Court deems just and equitable.

## COUNT FOUR

### *42 U.S.C. § 1983, Violation of Substantive Due Process—Against All Defendants*

125. Plaintiffs incorporate by reference the contents of the preceding paragraphs as if fully set forth herein.

126. Plaintiffs are persons protected by this statute, the United States Constitution, the New Jersey Constitution, and federal and state law.

127. Plaintiffs' rights include the right to use and enjoy their property, both real and personal, including the Amethyst Beach Motel, free from unlawful interference.

128. The Defendants' conduct, including the Press Release and passing the Condemnation Ordinance, constitute Borough policy, custom, practice and/or the moving force behind the constitutional violations detailed herein.

129. The actions of Defendants, collectively and individually, acting under color of law in carrying out the actions detailed above, and pursuant to municipal policy, custom, or practice, have deprived Plaintiffs of their rights, privileges, and immunities secured by the

Constitution or laws of the United States, including having deprived Plaintiffs of their property rights without due process of law. Defendants' conduct lacked any legitimate purpose, were arbitrary, capricious, irrational, willful, improper, and unlawful, improperly motivated and conscience-shocking.

130.    Among other things, Defendants have taken actions unrelated to any legitimate governmental objective as part of an unlawful scheme directed at Plaintiffs intended to block Plaintiffs' use and enjoyment of the Property and/or strong-arm Plaintiffs into selling the Property to the Borough without just compensation.

131.    In enacting the Condemnation Ordinance and misusing governmental resources, the Defendants' conduct described above was intentional and was intended to injure and harass Plaintiffs and obstruct their full use and enjoyment of their property rights for reasons that were unjustifiable by any legitimate government interest.

132.    Defendants' actions have been arbitrary, capricious, and irrational because they were motivated by a desire to prevent the Plaintiffs from operating the Amethyst Motel at the Property to provide services for the Motel's predominantly Black and Latino guests and guests with disabilities.

133.    Defendants' conduct shocks the conscience.

134.    Defendants violated Plaintiffs' clearly established rights under the Due Process Clause of which a reasonable person would have known.

135.    As a result of Defendants' unlawful conduct, Plaintiffs have suffered, and will continue to suffer, damages, as well as harm to their reputation.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for;

    a.  Compensatory and consequential damages;
    b.  Statutory and punitive damages;

c. Attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983, 1985 and 1988(b);

d. Prejudgment interest;

e. Costs of suit; and

f. Any other relief the Court deems just and equitable.

## COUNT FIVE

### *New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c), Article 1, Paragraph 1 of the New Jersey Constitution—Against All Defendants*

136.     Plaintiffs incorporate by reference the contents of the preceding paragraphs as if fully set forth herein.

137.     The New Jersey Constitution Article I, Paragraph 1, provides that "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness."

138.     N.J.S.A. 10:6-2(c) provides that "[a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief. The penalty provided in subsection e. of this section shall be applicable to a violation of this subsection."

139.     Plaintiffs' civil rights include the right not to be deprived of their property and the use and enjoyment of their property without due process of law, including the substantive due-process rights protected under the Fourteenth Amendment to the United States Constitution, as well as Article I, Paragraph 1 of the New Jersey Constitution, and federal and state law.

31

140.    The Press Release and the Condemnation Ordinance, among other illegal acts made under color of law by Defendants, constitute Borough policy, custom, practice and/or the moving force behind the constitutional violations detailed herein.

141.    Plaintiffs' rights include the right to use and enjoy their property, both real and personal, including the Amethyst Beach Motel free from unlawful interference.

142.    The actions of Defendants, collectively and individually, acting under color of law in carrying out the actions detailed above, and pursuant to municipal policy, custom, or practice, have deprived Plaintiffs of their rights, privileges, and immunities secured by the Constitution or laws of the United States, including having deprived Plaintiffs of their property rights without due process of law, lacked any legitimate reason, were arbitrary, capricious, irrational, willful, improper, and unlawful, improperly motivated and conscience-shocking.

143.    Among other things, Defendants have taken actions unrelated to any legitimate governmental objective as part of an unlawful scheme directed at Plaintiffs intended to block Plaintiffs' use of the Property or strong-arm Plaintiffs into selling the Property to the Borough without just compensation or legitimate public purpose.

144.    Defendants' actions have been arbitrary, capricious, and irrational because they were motivated by a desire to prevent the Plaintiffs from operating the Amethyst Motel at the Property to provide services for the Motel's predominantly Black and Latino guests and guests with disabilities.

145.    Defendants violated Plaintiffs' clearly established rights under the Due Process Clause and New Jersey Civil Rights Act of which a reasonable person would have known.

146.    As a result of Defendants' unlawful conduct, Plaintiffs have suffered, and will continue to suffer, damages, as well as harm to their reputation.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for;

    g.   Compensatory and consequential damages;
    h.   Statutory and punitive damages;
    i.   Attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983, 1985 and 1988(b);
    j.   Prejudgment interest;
    k.   Costs of suit; and
    l.   Any other relief the Court deems just and equitable.

## COUNT SIX

*42 U.S.C. §§ 1983; 1985(3); New Jersey Civil Rights Act, Conspiracy to Deprive Plaintiffs of the Constitutional Rights to Equal Protection and Substantive Due Process—Against All Defendants*

147.    Plaintiffs incorporate by reference the contents of the preceding paragraphs as if fully set forth herein.

148.    The acts of Defendants and other Borough officials, including but not limited to Mayor Kanitra, then-Police Chief Joseph Michigan and Borough Solicitor Kevin B. Riordan, Esq., constitute a violation of 42 U.S.C. §§ 1983; 1985(3) and N.J.S.A. 10:6-1, et seq. and the New Jersey Constitution, namely a conspiracy to violate Plaintiffs' civil rights.

149.    In furtherance of the conspiracy, Defendants (including Mayor Kanitra, then-Police Chief Joseph Michigan and other Borough officials) consciously sought to target and condemn the Property despite knowing that Defendants had no objective basis to do so and to eliminate the Amethyst Motel's mostly Black and Latino guests from the Borough.

150.    In furtherance of the conspiracy, Mayor Kanitra defamed Plaintiff John Fernicola and conspired with Chief Michigan to corruptly use municipal resources against Plaintiffs with the goal of targeting and ultimately condemning the Property.

151.    In furtherance of the conspiracy, Defendants (including Mayor Kanitra, then-Police Chief Joseph Michigan, and other Borough officials) agreed and conspired to use Borough

resources and the Borough police force to intimidate and harass Plaintiffs as well as deprive them of their statutory and constitutional rights.

152.    Defendants' concerted actions and agreements have been arbitrary, capricious, and irrational because they were motivated by a desire to prevent the Plaintiffs from operating the Amethyst Motel at the Property to provide services for the Motel's predominantly Black and Latino guests and guests with disabilities.

153.    Taken together, the Press Release and the Condemnation Ordinance, among other illegal acts by Defendants, constitute Borough policy, custom, practice and/or the moving force behind the constitutional violations detailed herein.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for;

a. Compensatory and consequential damages;
b. Statutory and punitive damages;
c. Attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983, 1985 and 1988(b);
d. Prejudgment interest;
e. Costs of suit; and
f. Any other relief the Court deems just and equitable.

## <u>COUNT SEVEN</u>

### *Failure to Turn Square Corners*

154.    Plaintiffs incorporate by reference the contents of the preceding paragraphs as if fully set forth herein.

155.    In <u>F.M.C. Stores v. Borough of Morris Plains</u>, 100 N.J. 418, 426-27 (1985), the Supreme Court of New Jersey upheld the policy that all government actions must further the public interest and must be undertaken with the utmost fairness to private parties affected by those actions. Specifically, the Court stated that in "the condemnation field, government has an overriding obligation to deal forthrightly and fairly with property owners. It may not conduct itself so as to achieve or preserve any kind of bargaining or litigational advantage over the

property owner.  Its primary obligation is to comport itself with compunction and integrity, and in doing so government may have to forgo the freedom of action that private citizens may employ in dealing with another."

156.    At his deposition, Mayor Kanitra conceded that Borough introduced the Condemnation Ordinance as part of the Borough's negotiation strategy with Plaintiff John Fernicola to acquire the Property.

157.    Mayor Kanitra's admission constitutes a per se illegal use of the eminent domain power and related municipal authority.

158.    Based on the above conduct, Defendants have failed to abide by the standards and requirements of municipal governments and officials, including professionals under the "Turn Square Corners Doctrine" as established and mandated by the Supreme Court of New Jersey.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for;

    a.  Compensatory and consequential damages;
    b.  Statutory and punitive damages;
    c.  Attorney's fees;
    d.  Prejudgment interest;
    e.  Costs of suit; and
    f.  Any other relief the Court deems just and equitable.

## COUNT EIGHT

### *Malicious Use of Process*

159.    Plaintiffs incorporate by reference the contents of the preceding paragraphs as if fully set forth herein.

160.    Defendants, (acting through Borough officials including Mayor Kanitra) conspired to (and did in fact) charge Mr. Fernicola without probable cause on or about April 11, 2020 for "violations" of Disorderly Persons Offenses under A:9-49(a).

161.    On April 8, 2020 prior to bringing charges against Mr. Fernicola, Mayor Kanitra and then-Police Chief Michigan exchanged behind the scenes text messages where Mayor Kanitra stated, "I hope you unload on him tomorrow." Mayor Kanitra's comment that he "hope[s] [the police chief] unload[s] on [Mr. Fernicola] tomorrow," demonstrates that the Mayor incited action by the Borough's Police Department against Mr. Fernicola. This comment is evidence of official misconduct, but it also reveals an unambiguous malice for Mr. Fernicola by Borough officials.

162.    Further, Chief Michigan's statement that he would "have no problem calling [Mr. Fernicola] out over the phone and putting out our own press release with an announcement of all the pending criminal charges we can issue him for his past and current actions" establishes that the highest police official in the Borough had malice for Mr. Fernicola and was even willing to threaten unfounded criminal prosecution against him. As a pretext for the charges, the Borough's Police Department did just that and issued a press release falsely stating that Mr. Fernicola violated the Governor's COVID-19 related state of emergency orders.

163.    On or about the first week of April 2020, Borough Officer Ippolito, without legal basis, also instructed the occupants of the Amethyst Beach Motel that they did not have to pay and that they did not have to leave the hotel. Because the Borough's Police Department refused to remove the several bad actors from the Property, and because they advised them that they did not have to leave and did not have to pay, several individuals wreaked havoc at the Property leaving Mr. Fernicola and the Amethyst without recourse. However, it was not until April 25, 2020, that Governor Murphy expanded the COVID-19 eviction moratorium to hotel occupants such that the Amethyst and John Fernicola were not able to remove any occupants from the

Property. Defendants therefore had no legal basis to prevent Plaintiffs from removing hotel occupants who failed to pay for services provided.

164.    Defendants instituted an action in municipal court against Mr. Fernicola for "violations" of Disorderly Persons Offenses under A:9-49(a).

165.    The action was motivated by malice and instituted for the sole purpose of harming Mr. Fernicola personal and business reputation as well as the Amethyst Motel's financial profitability.

166.    The Borough initially scheduled a remote trial with respect to the criminal charges to be held on or about June 19, 2020, but this matter sat idle until June 22, 2022.

167.    Two and a half years after the Borough filed unsupported charges against Mr. Fernicola, this case proceeded to trial in person before Municipal Judge Phillip M. Miller, J.M.C. on October 31, 2022.

168.    Defendants had no probable cause or legal basis to prosecute Mr. Fernicola.

169.    At the trial, none of the Borough's witnesses (including the police officer with relevant information who arrived on scene) appeared in court. The Municipal Judge concluded that even if the police officers appeared, none of them had personal knowledge of the alleged actions cited to support the Borough's issuance of the summonses against Mr. Fernicola in the first instance.

170.    Prior to issuing an order dismissing the summons, the judge also noted that under the circumstances, Mr. Fernicola would not stipulate to probable cause.

171.    The Municipal Court dismissed the charges against him with prejudice on October 31, 2022.

172.    The Municipal Court subsequently issued an expungement order requiring that all state entities, including the Borough, "remove from their records all information relating to [Mr. Fernicola's]" baseless charges for four alleged violations of <u>N.J.S.A.</u> A:9-49A, disorderly person violations. The expungement order also states that in response to any records requests regarding the baseless charges against Mr. Fernicola, "the court office or law enforcement agency shall reply with respect to the arrest/charge/disposition, which is the subject of this Order, that there is no record."

173.    Because the Municipal Court dismissed the action with prejudice and expunged Mr. Fernicola's record, the action terminated in Mr. Fernicola's favor.

174.    Mr. Fernicola suffered a special grievance, including but not limited to, lost business revenue, reputational harm, and injury to property as a result of Defendants' unlawful conduct.

175.    This two-year plus ordeal interfered with Mr. Fernicola's liberty and property interests and inflicted damages on Mr. Fernicola and his business, including but not limited to, monetary harm, reputational harm and significant legal fees and costs incurred in defending himself from these baseless charges.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for;

a.  Compensatory and consequential damages;
b.  Statutory and punitive damages;
c.  Attorney's fees, including fees pursuant to <u>N.J.S.A.</u> 59:9-5;
d.  Prejudgment interest;
e.  Costs of suit; and
f.  Any other relief the Court deems just and equitable.

## <u>COUNT NINE</u>

### *Tortious Interference with Prospective Economic Advantage and/or Contractual Relations*

176.    Plaintiffs incorporate by reference the contents of the preceding paragraphs as if fully set forth herein.

177.    Plaintiffs had a reasonable expectation of economic gain.

178.    Defendants have intentionally and maliciously sought to interfere with Plaintiffs' prospective contracts through initiation of the unlawful action against Mr. Fernicola, the conspiracy to target Plaintiffs and the Property, and the repeated bad faith attempts to condemn the Property without a legitimate public purpose.

179.    For years, Plaintiffs maintained a contract with the Ocean County Board of Social Services to provide housing services for guests with disabilities, special needs, and other vulnerable populations. As a result of Defendants' conduct, Plaintiffs recently were forced to discontinue their long-held contract with the Ocean County Board of Social Services.

180.    Defendants incorrectly and with malice informed certain individuals that were staying at the Property in early April 2020 that they did not have to pay Plaintiffs and that there were entitled to stay at the Motel anyway. Many of them did, and they never paid. When Plaintiffs attempted to mitigate the situation, Defendants issued unfounded summonses against Mr. Fernicola.

181.    Defendants took these actions without legal basis or privilege to do so, knowing the effect the actions would have on Plaintiffs' business and contractual relationships and/or prospective economic advantage.

182.    As a consequence of Defendants' intentional and malicious interference with the prospective economic advantage, Plaintiffs have suffered and will continue to suffer damages.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for;

    a.  Compensatory and consequential damages;
    b.  Statutory and punitive damages;

c. Attorney's fees;
d. Prejudgment interest;
e. Costs of suit; and
f. Any other relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury as to all issues.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify under penalty of perjury that it is true and correct that the matter in controversy is not the subject of any other action or proceeding pending in this or other court or other dispute resolution forum.

By: */s Paul V. Fernicola*

Paul V. Fernicola, Esq.
Robert E. Moore, Esq.
**PAUL V. FERNICOLA & ASSOCIATES, LLC**
219 Broad Street
Red Bank, New Jersey 07701
Telephone: (732) 345-0600
Email: pvf@fernicolalaw.com
Email: rem@fernicolalaw.com

*Attorneys for Plaintiffs*
*John A. Fernicola, John Fernicola, and Theresa M. Perrone*

By: */s Corinne McCann Trainor*

Corinne McCann Trainor, Esq
Michael W. Sabo, Esq.
**FOX ROTHSCHILD LLP**
**Formed in the Commonwealth of Pennsylvania**
Princeton Pike Corporate Center
997 Lenox Drive
Lawrenceville, NJ 08648
Telephone: 609-844-3038
Facsimile: 609-896-1469
Email: ctrainor@foxrothschild.com
Email: msabo@foxrothschild.com

*Attorneys for Plaintiffs*
*John A. Fernicola, John Fernicola, and Theresa M. Perrone*

Dated: November 22, 2023